· *McHenry* for plaintiff: *Harlan & Craddock* for defendant.

LOUISVILLE AND
ELIZABETHTOWN
TURNPIKE ROAD
COMPANY
*vs*
MERIWETHER.

---

## Louisville and Elizabethtown Turnpike Road Company *vs* Meriwether.

### ERROR TO THE JEFFERSON CIRCUIT.

*Notice. Penalties. Construction of Statutes.*

JUDGE MARSHALL delivered the opinion of the Court.

THIS action of debt was brought to recover the defendant's subscription of three shares of one hundred dollars each in the stock of the Louisville Turnpike Road, to be constructed through Elizabethtown, &c., which was chartered by an act of February 2d, 1833: (*Session Acts*, 270,) amended by an act of February 22d, 1834: (*Session Acts*, 577;) and also by an act of January 17, 1835: (*Session Acts*, 24,) and by other acts not necessary to be referred to; and to recover, also, five per cent. a-month interest or damages for failing to pay the several calls on said three shares, amounting, as alledged and demanded in the declaration, to $1200 in addition to the amount subscribed. A demurrer to the declaration having been sustained and judgment thereupon rendered for the defendant, the sufficiency of the declaration is the only question to be considered; and the only objection made to it being, that it does not show a sufficient notice or publication of the calls made by the board of directors or managers, upon the subscribers of stock, we shall confine our attention to that point.

By the article of subscription, as set forth in the declaration, and which is substantially conformable with the charter, the defendant promised to pay one hundred dollars for each share of stock set opposite to his name, to be paid agreeably to the provisions of the act of February 2d, 1833, and February 22d, 1834, above referred

DEBT.

*Case 6.*

*Sept.* 7.
Case stated.

The charter of
the Louisville
and Elizabeth-
town turnpike
road presents no
particular mode
on which notice
shall be given to
subscribers for
stock, of the

terms and mode
of payment of
the calls on the
stock holders.

to. By the article of subscription, as prescribed by the charter, each subscriber promises to pay "in such manner and proportions, and at such times as shall be determined by said President, &c. and agreeable to the act, &c." The undertaking then is to pay as may be determined by the President, &c. agreeably to the charter. And as upon looking through the original and amendatory acts, we find nothing which should be understood as making the obligation to pay the sum subscribed in such manner and proportions, and at such times as the President and Managers should determine, in any degree dependent upon any particular mode of notifying such determination, or upon giving notice in any manner to the subscribers or shareholders, the words "agreeable to the act," or "agreeably to the act," &c. are satisfied by a reference to the restrictions which it contains with respect to the times and proportions in which the calls are to be made.

The subscription by its terms, obliges the subscribers to pay the calls which may be made by the President, &c. when authorized by the charter. Is not each subscriber bound to take notice of the calls made within the power of the directory?— QUERY.

By the terms of the subscription then, every subscriber promises absolutely to pay the calls made by the President, &c. provided they be made agreeably to the charter. It might not perhaps be unreasonable to say, under the terms of this article and of the charter, that each subscriber being a member of the corporation, should be presumed or bound to take notice of the calls made by the President and Managers in public meeting, and entered upon their record; and especially as by comparing the articles of subscription with the statute, each subscriber might know the utmost that could be required of him; and any departure from that would be a relaxation or dispensation in his favor.

Notice given through the medium of public newspapers in the vicinity of the subscribers, is reasonable and sufficient to authorize a recovery of the instalments of subscribers, but not sufficient to authorize the recovery of a penalty.

But be this as it may, the usual mode of notifying calls in incorporated companies, is by publication in one or more newspapers presumed to be near the residence of the mass of the shareholders, and to furnish to them easy means of knowledge. And as it appears that the defendant subscribed in the books which were opened agreeably to the directions of the charter at Louisville, and that he resided and still resides in Jefferson county, we think the publication of the several calls in the "Journal," a public newspaper published at Louisville, must

be regarded as furnishing reasonable notice to him, and that the averment of such publication contained in the declaration, is a sufficient averment of notice to show his liability to the action for the non-payment of the calls so published.

But the question whether the plaintiffs have shown themselves entitled to recover the penalty of five per cent. per month for non-payment of the several calls, stands upon different ground. The obligation to pay this heavy penalty forms no part of the original contract, and cannot be implied from it. But it is founded in the 9th section of the charter which imposes it obviously as a penalty; and upon well settled principles, the right to demand it can only exist in consequence of an exact pursuance on the part of the plaintiffs of those steps which, upon a strict construction of the statute, were necessary to the incurring of the penalty.

The ninth section of the original act declares, that if any stockholder, original subscriber or assignee, "after thirty days' notice in the public papers before mentioned," of the time and place appointed for payment, &c., shall neglect to pay, &c. for thirty days, he shall pay, in addition to the instalment called for, at the rate of five per centum per month for every delay of such payment, and provides that in a certain event, the stock of such delinquent may be forfeited, or that in default of payment as aforesaid, the President, &c. may, at their election, sue for the recovery of the instalment with the penalty. It may here be remarked in support of the conclusion already stated, that there is no other provision in the charter in relation to notice or publication of the calls for instalments of stock, and that these provisions of the ninth section obviously relate not to the means of fixing on the subscriber a liability to pay the instalments called for, but to the means of fixing on him a liability to the penalty or forfeiture declared in the section. In order to impose this liability there must not only be a failure to pay the calls, after the party was bound and might have been compelled to pay them, but there must be a failure (for thirty days) to pay them after "thirty

LOUISVILLE AND
ELIZABETHTOWN
TURNPIKE ROAD
COMPANY
vs
MERIWETHER.

To authorize
the recovery of
the penalty, no-
tice in one of the
Louisville and
Elziabeth t o w n
papers for thirty
days, is indis-
pensable under
the amendatory
acts of 1834 and
of 1835.

days' notice in the public papers before mentioned."
What are those public papers before mentioned?

The third section of the original act provides for open-
ing subscription books for stock at ten places, from
Louisville towards the State line in the direction of Nash-
ville, and directs the Commissioners to give notice of the
times and places of opening the books in one or more of
the public newspapers at each of the places where the
books shall be opened. The fourth section makes it the
duty of the Commissioners at Louisville, in a certain
state of case, to give sixty days' notice in one or more
of the public papers published at Louisville and Bow-
linggreen, (at both of which places books were directed
to be opened,) of an election to be held at Munfordsville
for choosing a President, &c.; and the ninth section as
already stated, denounces the penalty of five per cent.
per month, or a forfeiture of stock, for a failure to pay
any instalment "after thirty [days'. notice in the public
papers before mentioned." Now the third section had
mentioned or referred to the public papers published at
ten different places, or at as many of those places as had
papers published in them; and the fourth section had
mentioned the public papers published at two of those
places; and it might perhaps have been difficult on the
original act, to say whether the papers referred to in the
third section or those referred to in the fourth section,
were intended to be referred to in the ninth section. But
it is certain that one set or the other was intended to be
referred to in the ninth section; and that nothing short
of thirty days' notice in one or the other set would suf-
fice to render the defaulter liable to the penalty or for-
feiture inflicted by the ninth section; and, consequently,
under the original act the publication of notice in the
Journal at Louisville would not be sufficient.

The amendatory act of 1834 above referred to, pro-
vides, in effect, that books shall be opened at three places
only, viz: Louisville, the Mouth of Salt river and Eliza-
bethtown; and dispenses with the construction of the
road farther than from Louisville to Elizabethtown, by
the Mouth of Salt river; but says nothing of any publi-
cation, nor does it dispense expressly with any. The ar-

ticle of subscription subscribed by the defendant, bears date after the passage of this act and refers to it. If the question now under consideration stood upon these two acts alone, we should find no sufficient ground for saying that notice in one or more of the public papers, published at Louisville alone, would satisfy the ninth section, and especially when it does not appear that there was no public paper published at one or both of the other two places designated for opening the books. By the third amendatory act above referred to, (of January 17th, 1835,) passed after the date of the article of subscription sued on, but before the date of any of the calls for instalments as set out in the declaration, and under which act it may be assumed that the Company was organized, so much of the fourth section of the original act as directs sixty day's notice to be given in the papers at Louisville and Bowlinggreen, of the election, &c. is repealed, and thirty days' notice of an election to be held at Louisville is directed to be given in one or more of the newspapers published at Louisville, and in one in the town of Elizabethtown, from which we think it is to be inferred that there was one paper published at Elizabethtown, which is not negatived by the declaration; and supposing that there was probably none at the Mouth of Salt river, which however is not averred, there should, according to our construction of the acts, have been thirty days' publication of each of the calls in at least one of the papers published in Louisville and one at Elizabethtown, before the Company could, under the ninth section, demand either the penalty or the forfeiture for the non payment of such calls. Our construction upon the original and first amendatory act would be substantially the same.

It is contended that so far as the defendant or other subscribers, residing in Louisville or Jefferson county were concerned, there could be no utility in publishing in other papers besides those at Louisville, and therefore the act should not be construed as requiring any additional publication. The force of this reasoning might be admitted so far as notice could be deemed requisite to make the subscriber liable to pay the calls merely; as to which, however, the statute prescribes nothing; and

LOUISVILLE AND
ELIZABETHTOWN
TURNPIKE ROAD
COMPANY
vs
MERIWETHER.

if the plaintiffs were content to demand the reasonable penalty of six per cent. for the non-payment of their calls, they might perhaps insist upon the sufficiency of reosonable means of notice. But they demand a penalty flagrantly enormous, and as demanded, entirely unreasonable. They demand it on the letter of the statute, and their right to it must be tested by the letter of the statute; and we think it clear that the ninth section requires publication of notice in more than one newspaper in order to make the delinquent subscriber liable to the penalty.

The declaration, therefore, does not show any title to the $1200 demanded as interest or penalty or damages for the non-payment of the several calls by the defendant. But as it shows a good cause of action for the amount of the calls themselves, the court erred in sustaining the demurrer to the whole declaration, and in rendering judgment in bar against the plaintiff. It was competent for the defendant to have demurred generally to so much of the declaration as demanded and attempted to make title to the penalty, or interest at the rate of five per cent. per month, and the declaration might have been adjudged bad as to that matter.

Wherefore, the judgment is reversed and the cause remanded, with directions to overrule the demurrer to the declaration, and for further proceedings.

*Thruston* for plaintiffs.    *Clarke* for defendant.